**Affirmed and Opinion filed May 7, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00891-CR

**BLAINE T. BOUDREAUX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1590590**

## OPINION

A jury convicted appellant of felony murder and assessed punishment at 80 years in prison. In four issues appellant challenges his conviction on the grounds that the (1) evidence is legally insufficient to support the verdict; (2) trial court abused its discretion in admitting irrelevant extraneous offense evidence; (3) trial court erred in admitting evidence of a scene diagram in violation of appellant's right to confrontation; and (4) trial court erred in admitting evidence of a scene diagram because it was hearsay. We affirm.

## FACTUAL BACKGROUND

On April 26, 2015, at 3:03 p.m., appellant drove away from his apartment building in a black pickup truck. The leasing agent, who saw appellant leave the apartment complex, testified that appellant was alone in the truck when he left.

Less than 20 minutes later, at 3:20 p.m., video showed appellant's black pickup truck hitting a car in front of it at a red traffic light (the "First Accident"). The truck hit the car hard enough to push that car into the car in front of it. At the time of the First Accident appellant's pickup truck still had a front bumper and a license plate. There also appeared to be no damage to the truck's front windshield.

Officer Zacchaeus Scott of the Houston Police Department was dispatched to the scene of the First Accident. Scott testified that the accident involved three vehicles and was to the right of the train tracks on Fannin Street. Scott issued a citation to appellant for failure to control speed. The middle vehicle was driven by a mother with a small child in the car. The child was transported to Texas Children's Hospital as a precaution. Scott testified that appellant admitted fault at the accident scene claiming he was distracted by his mobile phone.

Houston Police Officer Chad Long testified that in reviewing the video of the First Accident he observed that appellant was driving erratically. Long testified that right before the First Accident, appellant's truck was straddling the lane marker, and stayed stopped at a green light for approximately 20 seconds after all other cars had driven through the intersection.

Between 5:00 and 5:30 p.m. on the same day, appellant was driving northbound on Weslayan Street when he failed to control speed and failed to stop at a red traffic light hitting the back of a small Smart Car parked at the red light (the "Second Accident"). Joe Sexton was the driver of the Smart Car, which was the third

2

car stopped at the traffic light. Sexton "heard a screeching sound and looked in the mirror, and there was a truck bearing down on" him. The large black pickup truck crashed into the rear of Sexton's car. Sexton identified appellant as the driver of the truck and testified that immediately after the accident appellant jumped out of the truck to check on Sexton's well-being. Video and still photographs of the Second Accident showed that appellant's front bumper, license plate, and windshield were intact after the accident.

Samantha Mitchell was in the car in front of Sexton's car when the Second Accident happened. Mitchell testified that appellant's truck bumper was intact, and the windshield was not broken. Mitchell testified that all the cars involved in the accident stopped in a service station parking lot so the drivers could conclude the investigation without impeding traffic. After the Second Accident investigation concluded appellant "peeled out" of the service station parking lot at approximately 5:45 p.m. Steve McGinnis, a bystander witness to the Second Accident, testified that no one was in the black truck except the driver.

Approximately 15 to 20 minutes later, Alma Balderas[1] and her husband Jesus were driving near Lockwood Drive and Interstate 10. Alma saw a black pickup truck with a "completely damaged" front end speeding down Lockwood toward I-10. Alma testified that the truck did not have a front bumper and the windshield was damaged. Alma testified that the driver, whom she later identified as appellant, was driving recklessly and appeared to be fleeing. To keep from being hit by the truck Jesus had to drive their car onto the grassy median that separated the lanes on Lockwood. While the truck was stopped at the traffic light Alma and Jesus observed appellant with his head resting on the steering wheel of the truck.

---

[1] Alma and Jesus Balderas testified about the Fourth Accident. For ease of reference they will be referred to by their first names.

When the light turned green another driver honked because the truck was not moving. Appellant sped away from the intersection, driving approximately 60 or 70 miles per hour. When the truck came to the next intersection, it ran the red light and crashed into a car that was proceeding through the intersection (the "Fourth Accident"). Jesus stopped the Balderas's car; Alma called 911 and went to the scene of the accident. Another bystander pulled a small boy out of the wrecked car, and Alma realized the boy was gravely injured. The boy was later identified as six-year-old Joshua Medrano, who later died from injuries received in the crash.

Jesus also testified about the Fourth Accident and appellant's driving leading up to the accident. Immediately after the accident happened, Jesus went to the scene to try to render aid. Jesus realized first aid would not be helpful and observed appellant walking in circles around his truck. Jesus walked to appellant's truck because it appeared to Jesus that appellant might attempt to flee. Jesus saw appellant opening the truck door appearing to look for something. Jesus testified over objection that he saw appellant take white medicine bottles out of the truck and push them through holes in the fence over I-10.

Officer David Jones of the Houston Police Department Vehicle Crimes Division responded to the scene of the Fourth Accident at 6:11 p.m. on April 26, 2015. By the time Jones arrived patrol units and Fire Department units were on the scene. Jones spoke with appellant at the scene and placed appellant in the back of his patrol car. Appellant was not under arrest at that time but Jones wanted to get a statement from appellant and wanted to make sure appellant did not leave the scene.

Appellant's videotaped statement from the scene of the accident was admitted into evidence without objection. Appellant stated he was the only person in his truck but was unable to explain what happened leading up to the accident. Officer Alfonso Garcia, who interviewed appellant, testified that appellant appeared incoherent

4

during the interview. At one point during the interview, appellant told Garcia that he had been driving his work van when the accident happened, but later corrected himself stating that he was driving his personal truck.

The next day, Officer Nathan Schroeder, a detective in the Houston Police Department Hit-and-Run Division, was dispatched to an area near Texas Spur 5 in Harris County to investigate the offense of failure to stop and render aid ("the Third Accident"). The dispatch was a result of a citizen's report of a body discovered in the area. Schroeder learned during the investigation that the accident occurred the day before on April 26, 2015. The body was later identified as Leonard Batiste, who died as a result of multiple blunt force injuries. Parts of appellant's truck, including the bumper and license plate, were found near Batiste's body. The Dodge emblem from the front of the truck and pieces of the headlamps were also found. Schroeder testified that the license plate found at the scene of Batiste's body was the same license plate number contained in the citation for failure to control speed from the First Accident. The vehicle with that license plate was registered to appellant.

Elizabeth Richey, a forensic examiner in the DNA unit at the FBI laboratory in Quantico, Virginia, worked in the Houston Forensic Science Center at the time of the accident. Richey examined known DNA samples from Batiste and compared them with samples of blood and tissue obtained from appellant's truck. Specifically, Richey tested blood from the exterior front passenger side hood and the back side of passenger side mirror, tissue from the front passenger side door, exterior front passenger's side hood, and passenger's side windshield. In each of the samples Batiste could not be excluded as being the person whose tissue and blood were on the truck. The chances of the blood and tissue not being that of Batiste ranged from 1 in 180 billion to 1 in 10 quintillion.

Charles Cornelius, an investigator with the Harris County District Attorney's

Office, drove the suspected route driven by appellant between the Second and Fourth Accidents. Cornelius began driving on Sunday evening at 5:45 p.m., leaving the parking lot of the service station where appellant drove away after the Second Accident. Cornelius drove the same day of the week at the same time of day during the same time of year as the day of the offense. Cornelius drove toward the site of the Fourth Accident passing the site of the Third Accident where Batiste's body was found. The elapsed time was 17 minutes and 55 seconds putting Cornelius at the site of the Fourth Accident at approximately 6:07 p.m. The first 911 calls from the Fourth Accident were made shortly after that time on the date of the accident.

**SUFFICIENCY OF THE EVIDENCE**

In appellant's first issue he argues the evidence was legally insufficient to support the jury's verdict of felony murder.

In reviewing the legal sufficiency of the evidence to support a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our review, we consider all of the evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). The jury is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may choose to believe or disbelieve all or a portion of a witness's testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the prevailing party. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016).

The jury may not draw conclusions based on speculation but may draw

multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Winfrey*, 393 S.W.3d at 771.

Appellant contends in this case that the evidence was insufficient to show that he committed an underlying felony (failure to stop and render aid to Batiste) and that he was either in flight from that felony when he hit and killed Medrano or that he was in furtherance of that felony at the time of the Fourth Accident.

Felony murder essentially is "unintentional" murder committed in the course of a felony. *Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014). The Penal Code provides that felony murder occurs when a person:

> commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code Ann. § 19.02(b)(3). There is no requirement of a culpable mental state for "the act of murder." *Lomax v. State*, 233 S.W.3d 302, 305, 306 (Tex. Crim. App. 2007). Thus, the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying committed or attempted felony giving rise to the act. *Id.* at 306.

Under the felony murder statute, the State must prove five things: "(1) an underlying felony, (2) an act clearly dangerous to human life, (3) the death of an individual, (4) causation (the dangerous act causes the death), and (5) a connection between the underlying felony and the dangerous act ('in the course of and in

7

furtherance of . . . or in immediate flight from')." *Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010). The "act clearly dangerous to human life" must be the cause of the victim's death. *Rodriguez*, 454 S.W.3d at 507. Whether the act is clearly dangerous to human life is measured under an objective standard, not the subjective belief of the actor. *Lugo–Lugo v. State*, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983). *McGuire v. State*, 493 S.W.3d 177, 188 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

## I.  The evidence was sufficient to establish that appellant committed the offense of failure to stop and render aid.

In his first sub-issue appellant argues he did not have the requisite knowledge to commit the offense of failure to stop and render aid (FRSA).

Appellant's indictment for felony murder alleged that the underlying felony offense was FRSA by driving and operating a vehicle that was involved in an accident that resulted in or was reasonably likely to result in death to Batiste. A person commits the felony offense of FRSA if he operates a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person and fails to:

> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;

> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and

> (4) remain at the scene of the accident until the operator complies with the requirements of [Transportation Code] Section 550.023.

Tex. Transp. Code Ann. § 550.021.

Appellant argues the evidence was legally insufficient to show that he knew

8

he had been in an accident that was reasonably likely to have caused a person's death. Appellant acknowledges there was evidence that his truck hit Batiste but argues there was no evidence that appellant was the operator of the truck at the time it hit Batiste or that appellant had knowledge that the accident occurred and that the accident was reasonably likely to result in injury or death of a person.

There is no requirement under the statute that the driver cause the accident or that an eyewitness must see the accident and testify that the driver knew that he was involved in an accident. *Curry v. State*, — S.W.3d — No. PD-0577-18, 2019 WL 5587330, at *7 (Tex. Crim. App. Oct. 30, 2019); Tex. Transp. Code Ann. § 550.021(a) (stating that a driver has certain responsibilities if he is involved in an accident, but not specifying how the accident must have been caused or how the driver was involved in the accident, only that he was involved). The culpable mental state for FSRA is established by showing that the accused had knowledge of the circumstances surrounding his conduct, meaning the defendant had knowledge that an accident occurred, and the accident was reasonably likely to result in injury or death of a person. *Curry*, 2019 WL 5587330 at *5.

In this case the jury heard evidence that at 5:45 p.m. appellant sped away from the site of the Second Accident in his black pickup truck with intact bumper, license plate, and windshield. Approximately 25 minutes later, witnesses saw appellant speeding and driving erratically in the black pickup truck, which at that time did not have a bumper, license plate, or intact windshield. The jury also heard evidence that appellant's bumper and license plate were found lying near Batiste's body. Blood and tissue from Batiste were recovered from several locations on appellant's pickup truck. Witnesses to the Second Accident and the Fourth Accident testified that appellant was the sole occupant of the pickup truck. In a videotaped statement appellant also admitted he was the only person in the truck that day.

9

The jury also heard the testimony of Dr. Merrill Hines, the medical examiner who conducted the autopsy of Batiste. Hines testified that Batiste died from multiple blunt force injuries, which included extensive skull fractures, hemorrhages around the brain, and tears and lacerations of the brain and brain stem. One skull fracture went from ear to ear and was described by Hines as "a specific type of fracture that is generally only seen in very high velocity impacts." Batiste experienced multiple leg fractures in both legs, which are frequently seen when pedestrians are struck by motor vehicles. According to Hines, the fractures reflected that Batiste had been hit from behind on the left side. Batiste's left arm was "essentially amputated by blunt force trauma."

Intent is a question of fact and therefore within the sole purview of the jury for which the jury may rely on its collective common sense and apply common knowledge and experience. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). A rational jury could conclude that appellant was the individual driving the black pickup truck during the applicable 25-minute window of time. A rational jury could also conclude, relying on its collective common sense and applying its collective common knowledge, that a person driving a vehicle would be aware of an impact so great that it broke the windshield, tore the front bumper off the vehicle, and left tissue and blood from the victim on the vehicle. A rational jury could also conclude that a person engaged in an impact great enough to cause multiple blunt force injuries including multiple fractures all over the victim's body would have knowledge that the accident was reasonably likely to result in injury or death of a person.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to establish that appellant was the operator of the truck when it hit and killed Batiste, was aware that an accident had occurred, and was

aware of the reasonable likelihood that someone may have been injured or killed in the accident. *See Curry*, 2019 WL 5587330, at *6 ("Juries can draw any reasonable inference from the facts so long as each inference is supported by the evidence.").

**II.   The evidence was sufficient to establish that appellant first committed the offense of FSRA and was in immediate flight from that offense when he struck and killed Medrano.**

In appellant's second sub-issue he argues the evidence was insufficient to show that he was in immediate flight from the offense of FRSA when he caused Medrano's death. To convict appellant of felony murder, the State was required to prove a connection between appellant's commission of FSRA and the dangerous act, *i.e.*, appellant hitting and killing Medrano either in the course of and in furtherance of FSRA or in immediate flight therefrom. *See* Tex. Penal Code Ann. § 19.02(b). Appellant contends he was not in flight from the FSRA when he hit and killed Medrano. Specifically, appellant argues the distance between the location of Batiste's body and the Fourth Accident was several miles, and appellant fell asleep at a traffic light right before the Fourth Accident "break[ing] the nexus" between appellant's alleged flight and the dangerous act.

Appellant cites *Sweed v. State* in support of his position. 351 S.W.3d 63 (Tex. Crim. App. 2011). In *Sweed*, in which the sole issue was whether the trial court erred when it refused the appellant's request to give an instruction in the jury charge on theft as a lesser-included offense, the Texas Court of Criminal Appeals defined the term "'immediate' as '[o]ccurring without delay; instant,' '[n]ot separated by other persons or things,' or '[h]aving a direct impact; without an intervening agency'" and applied the definition to the facts of that case. *Id*. at 69 n.5 (quoting Black's Law Dictionary 751 (7th ed. 1999)).

The complainant in *Sweed* observed the defendant among his work crew at a

11

construction site. 351 S.W.3d at 64. Later that day, the complainant heard one of his employees scream that someone had pulled a knife on him. *Id*. The employee told the complainant that the defendant had stolen a nail gun. *Id*. The complainant saw the defendant running away with something in his hands. *Id*. The defendant was seen entering an apartment, and the complainant and his father positioned themselves to watch the apartment until the police arrived. *Id*.

Between five and twenty minutes after the defendant had entered the apartment, the complainant saw the defendant leave the apartment empty-handed and wearing different clothing. *Id*. at 65. The defendant walked across the apartment complex parking lot and spoke to a group of men for about five minutes and then walked back in the direction of the apartment. *Id*. The defendant, seeing and recognizing the complainant, approached him and waived a knife at chest level. *Id*. When the defendant was about three feet away, the complainant put his hands in his pockets and acted like he had a gun. *Id*. Without saying anything, the defendant walked away and returned to the apartment. *Id*. These events all occurred over a period of fifteen to thirty minutes. *Id*. The police arrived five to ten minutes later, entered the apartment, located the defendant, and recovered the missing nail gun. *Id*.

The defendant in *Sweed* was indicted and convicted of aggravated robbery. *Id*. The trial court refused the defendant's request for a lesser-included offense instruction on theft. *Id*. The defendant argued that the trial court erred in denying his request. *Id*. The court of appeals affirmed. *Id*.

The Court of Criminal Appeals observed that if the State could not prove that the defendant was "in the course of committing theft," then the theft and the assault were separate events, and the defendant could not be found guilty of robbery or aggravated robbery. *Id*. at 69. Because the defendant did not dispute that he committed the theft, the primary issue was whether he had pulled a knife on the

12

complainant during or in immediate flight from the commission of the theft. *Id*.

The court concluded that the 15- to 30-minute delay and the intervening activities, including the defendant's act of leaving the apartment, rationally could be interpreted as evidence that he was no longer fleeing from the theft. *Id*. A jury rationally could conclude that the assault was a separate event from the theft, and the defendant could have been guilty only of the lesser offense of theft, not aggravated robbery. *Id*. Therefore, based on the evidence presented at trial, the court held that a jury instruction on the lesser-included offense of theft should have been given. *Id*. at 69–70.

Appellant argues that under the definition of "immediate" announced in *Sweed*, there was no evidence to establish that he was in immediate flight after the commission of the FSRA.

In this case, the jury heard evidence that appellant left the scene of the Second Accident at 5:45 p.m. and caused the Fourth Accident approximately 20 minutes later. When appellant left the Second Accident at 5:45 p.m. witnesses testified that his truck bumper was intact, and they did not see damage to appellant's truck windshield. Witnesses to the Fourth Accident testified that they saw appellant speeding and driving erratically with no bumper on the truck and a damaged windshield. There was no evidence that appellant encountered an "intervening agency" as described by the court in *Sweeney*, or that his progress was "separated by other persons or things" during this journey. The jury could have rationally inferred that appellant, in hitting and killing Batiste then hitting and killing Medrano, engaged in one continuous, criminal episode, not in a series of independent incidents. *See Zagone v. State*, 565 S.W.3d 366, 371 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting that an appellant who was engaged in one criminal episode without any intervening events was in immediate flight from attempted

13

theft).

Appellant argues that his alleged act of falling asleep behind the wheel of the truck while stopped at a red light "[broke] the nexus" of the continuous criminal episode in which he was engaged. Unlike the defendant in *Sweed*, appellant did not engage in an intervening act while in flight from the FSRA that would constitute separation by other persons or things, or an intervening agency. Appellant was seen with his head resting on the steering wheel and another motorist had to honk at appellant to alert him to the changing traffic signal. Appellant's seconds-long interlude at the traffic light did not constitute an intervening circumstance that disrupted his continued flight from the FSRA.

The jury also heard evidence that appellant was driving above the posted speed limit and erratically. Jesus Balderas drove his car onto a grassy median to avoid a collision with appellant. Jesus also testified that after appellant hit the Medrano's car appellant appeared as if he was going to flee the scene of the Fourth Accident, presumably on foot because appellant's truck was disabled. Appellant's attempt to leave the scene of the accident was consistent with one continuous criminal episode and immediate flight from the FSRA. Appellant also gave inconsistent accounts of the Fourth Accident, including appearing not to know which vehicle he was driving.

Viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to establish that appellant was in flight from the FSRA when he committed an act clearly dangerous to human life.

Appellant also asserts the evidence is insufficient to establish that he was in the course of committing the act of FSRA when he committed an act clearly dangerous to human life. Because we have determined the evidence is sufficient to establish immediate flight, we need not address this sub-issue. The elements of

14

felony murder in this case require proof of either immediate flight from the felony or "in furtherance of" commission of the felony. *See* Tex. Penal Code Ann. § 19.02(b)(3). We conclude the evidence was sufficient to support a conviction for felony murder and overrule appellant's first issue.

ADMISSION OF EVIDENCE

In appellant's second issue he contends the trial court erred in admitting evidence of the first two accidents and the destruction of the pill bottles.

## I. Appellant did not preserve error on the admission of evidence about the first two accidents.

Before testimony began appellant argued a motion in limine seeking to exclude evidence of the first two accidents that occurred on the day of the offense and evidence of appellant discarding pill bottles after the Fourth Accident. Appellant objected to admission of evidence of the first two accidents under Rules of Evidence 401, 402, 403, and "potentially 404(b)." Appellant argued that evidence of the first two accidents could potentially mislead the jury and was not relevant to the charged offense. The trial court determined that evidence of the first two accidents was relevant under Texas Rule of Evidence 402.

At trial, Officer Jorge Roman of the Metropolitan Transit Authority Police, testified that a Houston Police Officer asked for video footage that would reflect the First Accident. Appellant objected to admission of the video footage arguing the video was inadmissible under Texas Rules of Evidence 401, 402, and 403. The State argued that the video was admissible to show the timeframe in which appellant committed the offense of FSRA. Appellant further argued the video was inadmissible under Texas Rule of Evidence 404(b). The video of the First Accident was admitted over appellant's objection. Appellant did not request a running objection, and Officer Roman testified about the First Accident without objection.

Appellant's relevance objection to photographs of the First Accident was overruled.

When Sergeant Chad Long of the Houston Police Department Hit-and-Run Division, testified, the State introduced still photographs of the First Accident. Appellant's only objection was that the still photographs were cumulative of the video evidence. The trial court overruled appellant's objection to the cumulative nature of the photos.

Appellant did not object to other evidence that the State introduced regarding the First Accident, including introduction of appellant's traffic citation from the First Accident, the tow documentation from that incident, Officer Roman's testimony about his observations of the surveillance video, Officer Scott's testimony about his interaction with appellant after the accident, the remainder of Officer Long's testimony, and the testimony of the tow truck driver.

With regard to the Second Accident, appellant objected to the introduction of still photographs, which reflected the damage to the Smart Car, asserting the photographs were irrelevant. When the State offered still photographs of the surveillance video, appellant objected under the "best evidence" rule and requested a running objection under Rules 402, 403, and 901. Three witnesses testified about the events before, during, and after the Second Accident. Appellant did not object to their testimony on relevance grounds.

To preserve error based on the erroneous admission of evidence, an appellant must make a timely and specific objection in the trial court. Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Additionally, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—

16

Houston [14th Dist.] 2017, pet. ref'd). Because appellant did not object to the witness testimony about the first two accidents under Rules 401, 403 or 404(b), appellant failed to preserve this issue for appellate review.

We overrule appellant's sub-issue challenging admission of evidence about the first two accidents.

## II. The trial court's error in admitting evidence that appellant discarded the pill bottles did not affect appellant's substantial rights.

Before Jesus Balderas testified appellant objected to any testimony about appellant discarding pill bottles through the fencing over I-10 following the Fourth Accident. Appellant argued that the evidence was inadmissible under Texas Rules of Evidence 402, 403, and 702. The State argued the evidence was relevant to show appellant's motive for flight. The State explained that Rule 702 did not apply because it did not intend to offer Jesus Balderas as an expert witness. On appeal appellant argues the trial court abused its discretion in admitting evidence of the destruction of the pill bottles because the evidence "constituted irrelevant, extraneous offense or bad act evidence, in violation of Texas Rules of Evidence 401, 403, 404(b)."

We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

Evidence is relevant if it has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Mayes v. State*, 816 S.W.2d 79, 84 (Tex. Crim. App. 1991); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). To be relevant, evidence must be both material–that is, it must be offered for a

proposition that is of consequence to the determination of the case–and probative, such that it makes the existence of the fact more or less probable than it would otherwise be without the evidence. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).

In other words, proffered evidence, to be relevant, must "have influence over a consequential fact." *Foster v. State*, 909 S.W.2d 86, 88 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). Relevant evidence need not, by itself, prove or disprove a particular fact as long as it provides at least a "small nudge" toward proving or disproving a material fact. *Gonzalez*, 544 S.W.3d at 370. *see also Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). In determining relevance, courts must examine the purpose for which particular evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id*.

Appellant was charged with felony murder. The State argues that appellant's act of discarding the pill bottles was connected to the offense of felony murder because, "Evidence that the appellant had apparently incriminating evidence in his vehicle at the time of the fourth accident shows that the appellant did not dispose of this evidence after he struck Mr. Batiste. Thus, it tended to show that he was still in flight from the FSRA when he struck the Medranos' car." To the contrary, there is no evidence that the pill bottles contained incriminating evidence, that they even contained pills, or that the discarding of the bottles showed evidence of flight. The trial court erred under Texas Rule of Evidence 402 in admitting evidence tending to prove both the existence of the pill bottles and a motive based thereon; because this evidence was irrelevant, the court also erred under Texas Rule of Evidence 403 because there was no probative value concerning any relevant fact and the absence

of such facts was outweighed by the danger of unfair prejudice. *See Peters v. State*, 93 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (trial court erred in admitting evidence that did not directly relate to a fact of consequence in the case).

Having determined the trial court erred in admitting evidence that appellant discarded the pill bottles, we must address whether the erroneous admission was harmful. The erroneous admission of evidence is non-constitutional error that requires reversal, *i.e.*, is harmful, only if the error affects appellant's substantial rights. *Gonzalez*, 544 S.W.3d at 373. Non-constitutional errors that do not affect appellant's substantial rights must be disregarded. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Error affects substantial rights only if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. If we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id*. In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the error. *Id*. We consider everything in the record and may consider the jury instructions, the parties' theories of the case, and closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

Appellant argues that he was harmed by the admission of the evidence about the pill bottles because "it suggested that [appellant] was intoxicated by whatever medication was in the bottles." The record reflects, however, no discussion about the content of the pill bottles and no allegation that appellant was intoxicated by

ingesting what was in the bottles. Jesus' testimony about the pill bottles was brief, covering two pages in a multi-volume trial record from a trial that took place over several days. The jury heard plenty of other evidence of appellant's actions on the day of the offense and his motive for flight from the Third Accident, including his apparent desire to flee the scene and his apparent disregard for the accident's victims. Reviewing the record as a whole we do not harbor grave doubts that the error affected the outcome of the trial. *See Webb v. State*, 36 S.W.3d 164, 182–83 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We overrule appellant's second issue.

## III. The trial court did not abuse its discretion in admitting the accident site diagram through Officer Jones's testimony.

In appellant's third and fourth issues he contends the trial court erred in admitting State's Exhibit 150, a computer-generated diagram of the Fourth Accident site.

As part of Officer David Jones's investigation, he took measurements of the Fourth Accident scene. Jones mapped the scene by measuring the final resting position of each vehicle and any debris found at the accident. Jones also measured "Skid marks, tire marks, rubs, gouges, scratches, [and] things like that." The measurements taken by Jones were entered into a computer program that created a diagram of the accident scene. In this case the measurements were entered into the computer by another officer, Officer Nguyen, who did not testify at trial. Both Jones and Nguyen were present at the accident scene. The State introduced Jones's scene diagram into evidence as State's Exhibit 150.

Appellant objected on Confrontation Clause and hearsay grounds alleging the diagram was a scientific document and appellant was entitled to confront the officer who created the document. U.S. Const. Amend. VI; *Crawford v. Washington*, 541 U.S. 36, 50–52, 59 (2004). Jones testified that no scientific calculations went into

20

making the scene diagram. Jones took measurements and Nguyen entered those measurements into a computer program. The trial court overruled appellant's objection and admitted the scene diagram into evidence. After the scene diagram was admitted into evidence Jones did not testify about the diagram. After conducting the investigation Jones determined that appellant, by running the red light, was the driver at fault in the accident.

Officer Craig Sartor, an accident reconstructionist with the Houston Police Department, later testified using State's Exhibit 150, the accident site diagram, to reconstruct the accident. Appellant did not object to Sartor's use of the diagram in his testimony.

Appellant asserts that admission of the accident site diagram violated his right to confrontation. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (citing *Crawford*, 541 U.S. at 50–52, 59). Once both those conditions have been met and the Confrontation Clause has been implicated, testimonial hearsay is admissible only where "(1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *Woodall*, 336 S.W.3d at 642. Where the State seeks to introduce testimonial statements into evidence through a surrogate, the State must establish that the surrogate has at least some personal knowledge that the declarant's statements are true or else the statements are constitutionally inadmissible. *See Burch v. State*, 401 S.W.3d 634, 635–38 (Tex. Crim. App. 2013) (reviewer who "basically double-checked everything" the analyst did without actually conducting

21

or observing tests could not testify as to test results).

Invoking the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710 (2011), appellant argues he was entitled to confront Nguyen as the individual who prepared the scene diagram. The Court in *Bullcoming* was presented with the issue of

> whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement.

*Bullcoming*, 131 S. Ct. at 2710. The concern in *Bullcoming* was the admission of testimonial scientific evidence in documentary form sponsored by another scientist "who had neither observed nor reviewed" the analysis. *Id*. at 2712.

Here, rather than a laboratory report, as in *Bullcoming*, appellant objects to the introduction of an accident site diagram. Neither side argues, nor do we dispute, that the accident scene diagram was testimonial in nature as that term is defined in *Crawford*. *See* 541 U.S. at 59.

Appellant urges that Jones's opinion about the scene was "based on Officer Nguyen's observations about the scene." Appellant's argument assumes that the accident site diagram was not based on Jones's observations at the scene. Appellant specifically complains that "Officer Jones could not have provided testimony about the scene as conveyed in State's Exhibit 150 without relying upon and conveying the truth of Officer Nguyen's out-of-court assertions that resulted in the diagram.

Appellant's assumptions misrepresent the record. The record reflects that Jones had personal knowledge of the scene and was the person who took the measurements used to create the scene diagram. Nguyen merely entered Jones's

22

measurements into a computer program that generated the diagram. Jones was not a surrogate witness serving as a mere conduit for another analyst's opinions. Moreover, Jones did not base his testimony about the cause of the accident on the scene diagram. When asked what specific pieces of evidence Jones relied on in determining who was at fault, Jones responded, "We relied heavily on the witness statements." Jones explained that in the Fourth Accident they were fortunate to have unbiased witnesses at the scene to corroborate which vehicle was at fault.

Jones's personal knowledge of the accident site and lack of reliance on the diagram distinguish this case from *Bullcoming* and Texas cases following *Bullcoming*'s holding. *See e.g.*, *Burch v. State*, 401 S.W.3d 634 (Tex. Crim. App. 2013). In *Bullcoming* and *Burch*, the courts held that admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause. *See Paredes v. State*, 462 S.W.3d 510, 517 (Tex. Crim. App. 2015). Doing so deprives a defendant of his opportunity to cross-examine the non-testifying expert about the conclusions contained in the report and how the non-testifying expert arrived at those conclusions. *Id.*

This case is distinguishable because the testifying witness was more than a surrogate for the non-testifying witness's report. Jones had personal knowledge of the accident site and actually took the measurements used to create the diagram. Because Jones had personal knowledge of all the matters included within the diagram, appellant could adequately challenge its accuracy, including any statements contained within it and the measurements from which it was created, through his cross-examination of Jones. Moreover, Jones did not rely on the scene diagram in his testimony at trial. The trial court, therefore, did not abuse its discretion in admitting evidence of the scene diagram. *See Paredes*, 462 S.W.3d at 518–19. We overrule appellant's third issue.

In appellant's fourth issue he contends the accident site diagram was inadmissible as hearsay. Hearsay is a statement made other than by the declarant offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). A "statement" is an oral or written verbal expression or nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression. Tex. R. Evid. 801(a). The basis for the rule against hearsay is that such testimony is not subject to testing through cross-examination. *Matz v. State*, 14 S.W.3d 746, 747 (Tex. Crim. App. 2000).

Appellant argues that State's Exhibit 150 was inadmissible hearsay, which implicates the Court of Criminal Appeals opinion in *Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1990). In *Cole*, the court held that a Department of Public Safety chemist's report was a "matter observed by law enforcement personnel" and therefore, inadmissible under the public records exception to the hearsay rule. *Id.* at 806; Tex. R. Evid. 803(8)(B). To resolve the issue, the court employed a two-prong test: (1) whether the reports were objective, routine, scientific determinations of an unambiguous factual nature prepared by officials with no inherent motivation to distort the results and (2) the adversarial context in which the relevant tests were conducted. *Id*. at 808–09. The court noted the reports at issue were "remarkably subjective in nature as well as remarkably imprecise and subject to individual interpretation." *Id*. at 808.

In this case, the scene diagram required measurements and mathematical computations, which were conducted by Jones, the officer who testified at trial. There is nothing in the record to suggest that the diagram was subjective in nature, imprecise, or subject to interpretation. Texas courts have not generally treated demonstrative evidence, such as a diagram, as inadmissible hearsay. *See Pierce v. State*, 777 S.W.2d 399, 413 (Tex. Crim. App. 1989); *Clay v. State*, 592 S.W.2d 609,

613 (Tex. Crim. App. 1980); *Vollbaum v. State*, 833 S.W.2d 652, 657 (Tex. App.—Waco 1992, pet. ref'd).

Here, Jones was at the scene and took all the measurements required to create the diagram. Jones adopted the diagram as his own based on his direct knowledge of the accident scene. The fact that Jones did not input the data into the computer program that created the diagram does not automatically render the diagram hearsay. *See Mayfield v. State*, 848 S.W.2d 816, 819 (Tex. App.—Corpus Christi 1993, pet. ref'd) (diagram drawn by prosecutor was admissible through testimony of police officer who assisted in drawing the diagram and testified it was a fair representation of what it represented). The trial court did not abuse its discretion in admitting the diagram over appellant's hearsay objection.

We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Zimmerer, Spain, and Hassan.

Publish — Tex. R. App. P. 47.2(b).