**Barbara CLAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60392.**

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 16, 1980.

Bennie E. Ray, Brownsville, for appellant.

Selden N. Snedeker, Dist. Atty. and James R. Mardis, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

OPINION

DALLY, Judge.

This is an appeal from a conviction for theft of more than $200 but less than $10,-

000. The punishment is imprisonment for three years.

Appellant contends that the evidence is insufficient to sustain the conviction. She also contends that a chart prepared by the prosecutor was erroneously admitted in evidence and that the trial court erred in refusing to consider probation until restitution was made.

The indictment in this case alleges that on or about September 24, 1977, appellant did "intentionally and knowingly take, steal, appropriate, and carry away the corporeal personal property, to-wit, United States currency from Bob Youker, the owner thereof, without the effective consent of said owner, with intent to deprive the said owner of said property, said property being then and there of the value of more than $200.00 but less than $10,000.00 . . . ." Youker was the owner of a sporting goods store in Harlingen called The Sportsman. Appellant was employed as bookkeeper at The Sportsman from February, 1977, to October, 1977. The State offered evidence to show that appellant had used her authority as bookkeeper in order to embezzle money from her employer.

The business of The Sportsman was carried out in two departments, retail and athletic. The retail department, as the name implies, handled sales to individuals. The athletic department handled group sales to such organizations as softball teams and Little Leagues, and to high schools and universities throughout Texas and Mexico.

A separate cash register was maintained for each department. The retail department register was in the front or showroom portion of the building, while the athletic department register was located in appellant's office at the rear of the building. At the end of each business day, the two registers were totalled and the register tape, together with the cash and checks received that day, was placed in the store's safe. The following morning, the money received the preceding day would be deposited in the bank. A separate deposit slip was prepared for each register.

Appellant rarely, if ever, operated the retail department cash register. On the other hand, she was principally responsible for the athletic department register. Approximately eighty per cent of the transactions recorded on the athletic department cash register during the months she was employed were entered by appellant. The rest were chiefly entered by Lorna Scott, the receptionist-secretary, who filled in for appellant during lunch hours and on alternate Saturdays. Appellant also made most of the bank deposits.

Stuart Mayo, a certified public accountant, studied the records of The Sportsman for the period appellant was employed. At trial, he testified to twenty-four instances in which he found discrepancies indicating a theft of cash. Twenty-two of these discrepancies involved the athletic department, one involved the retail department, and one was unidentified as to department.

The following examples illustrate the discrepancies found by Mayo. The athletic department deposit slip for February 17, 1977, listed a check from Pelican's Wharf for $262.79, but there was no corresponding entry on the athletic department cash register tape. The total deposit for February 17 equalled the total shown on the cash register tape, but the cash deposited was $262.79 less than the cash shown by the tape to have been received. Mayo testified that he concluded from this that someone had taken $262.79 from the cash register and substituted the check. At the same time, the sale for which the check was received was not recorded on the cash register so that the total shown on the register tape and the total bank deposit would balance.

The athletic department deposit slip for May 21, 1977, listed a check from Zodiac Electronica for $1,231.55. A receipt for that amount signed by "B. Clay" was issued on that day, and indicated that the receipt was in payment for two sales orders for $1,089.90 and $141.65. The athletic department cash register showed the receipt of only $1,089.90. Once again, the total deposit equalled the total shown on the register tape, but the cash deposited was short by $141.65.

Two of the transactions which led to the discrepancies found by Mayo were the subject of detailed testimony. State's Exhibit Five was a sales order dated September 23, 1977. The customer was the Universidad Autonoma, Tampico, Tamaulipas, Mexico. The order was for football equipment, and totalled $1,431.80. The following notation appears at the bottom of the order: "Paid 1431.80 cash 9–23–77." Joe Cantu, the salesman who took this order, and Lorna Scott, who entered the sale on the athletic department cash register, confirmed that cash was paid for this purchase.

State's Exhibits Six and Seven were the athletic department cash register tape and bank deposit slip for September 23. There is an entry on the register tape for $1,431.80. However, the deposit slip shows that only $420.66 in cash was deposited that day, leaving $1,011.14 in cash unaccounted for. At the same time, the deposit slip lists checks totalling $23,482.32 for which there are no cash register entries. This resulted in an imbalance of $22,448.18 between the cash register total and the total deposit. Mayo testified that of the twenty-four discrepancies he discovered, this was the only instance where the cash register total and deposit slip total did not balance.

It was undisputed that appellant totalled out the athletic department cash register on September 23, prepared the deposit slip, and made the deposit for that day. Appellant did testify, however, that the register tape and deposit slip were not out of balance by over $23,000 on that day. She suggested that someone had substituted a cash register tape for the original.

State's Exhibit Two was a sales order dated September 24, 1977. The customer was the Universidad Noreste, Tampico, Tamaulipas, Mexico. Also for football equipment, the order totalled $1,526.40. Santana Garcia, the employee who wrote up this order, testified that payment was made in cash and that he gave this cash to appellant, who wrote "Paid" on the order form. Garcia testified that appellant was in charge of the athletic department cash register at the time, but that he did not see her enter the sale or put the money in the cash register drawer.

State's Exhibits Three and Four were the athletic department cash register tape and bank deposit slip for September 24. A letter code on the tape indicates that all of the entries were made by appellant. All of the register entries except three correspond to checks listed on the deposit slip. The three entries without corresponding checks, thus presumably representing cash purchases, are for $9.40, $9.98, and $1,126.25. There is no register entry for $1,526.40. The cash deposited on September 24 was $1,120.07.

While the records and testimony indicate that cash totalling $1,545.78 ($1,526.40 plus $9.40 plus $9.98) was received by the athletic department on September 24, only $1,120.07 in cash was deposited, a difference of $425.71. The difference between the sales order for $1,526.40 and the cash register entry for $1,125.45 is $400.15. Add to this last figure a check for $25.96 which was deposited but not entered on the cash register and the total is $426.11, only forty cents more than the apparent cash shortage. It was undisputed that appellant totalled out the athletic department cash register on September 24, prepared the deposit slip, and made the deposit.

In her own testimony, and during cross-examination of the State's witnesses by defense counsel, appellant offered several theories to explain the discrepancies discovered by Mayo. One theory posited that a customer might have paid for a purchase partly in cash and partly by check, while another hypothesized that a single check might have been given for two separate purchases. Neither of these theories explain the discrepancies found for September 23 and 24, however, since the evidence establishes that the purchases in question on those days were both strictly for cash. Another theory was that checks might have been written for cash or for amounts exceeding the purchase. But this would not explain the discrepancy on September 24, because all of the checks deposited that day, except one for $25.96, corresponded in amount to a cash register entry. A third theory was

that checks received in the retail department might have been placed in the athletic department cash register in exchange for cash to use in the retail register. Again this would not explain the September 24 discrepancy since the only unexplained check was for $25.96, far less than the $425.71 cash shortage for that day. It would also not explain the September 23 discrepancy, since none of the unexplained checks deposited for that day, singly or together, equalled the cash shortage of $1,011.14. Finally, none of the theories advanced by appellant explain why the $1,526.40 purchase on September 24 was entered on the cash register as $1,126.25.

It should also be noted that appellant testified extensively to the poor condition of the business records at The Sportsman, to the practice of crediting merchandise purchased and returned by school districts to the personal accounts of coaches, and to the practice of writing off the books credit purchases by coaches. Much of this testimony was corroborated by State witnesses. However, this testimony does not explain the discrepancies between cash received and cash deposited on September 23 and 24, or on the other twenty-two days mentioned in Mayo's testimony.

■ Viewed in the light most favorable to the jury's verdict, the evidence establishes a series of bank deposits in which the cash deposited was less than the cash received that day, as indicated by the cash register tape and other sales records. In most cases, the cash shortage on a given day was equal in amount to a check or checks received and deposited that day for which no corresponding cash register entry could be found. In other cases, the cash shortage was equal to the amount by which a transaction had been misstated on the cash register tape. The most reasonable and probable explanation for these cash shortages is theft.

These thefts must have been committed by the person in charge of the cash register, since only that person could properly manipulate the cash register entries in order to maintain the balance between the total re-

ceipts as shown on the cash register tape and the total bank deposit. The evidence establishes that most athletic department sales, which were the basis for twenty-two of the twenty-four cash shortages testified to by Mayo, were recorded on the cash register by appellant. Had the person making out the deposit slips each day carefully reconciled the cash register tape with the cash and checks received, these cash shortages would have been discovered. The evidence establishes that appellant prepared most of the deposit slips and made most of the deposits during her period of employment.

The State also proved that on September 23, 1977, a cash sale totalling $1,431.80 was made in the athletic department of The Sportsman. This cash was received by Lorna Scott and the sale was properly recorded by her on the cash register, but the deposit slip for September 23 indicates that only $420.66 in cash was deposited. Appellant prepared this deposit slip and made the deposit.

Finally, the State proved that on September 24, 1977, a cash sale totalling $1,526.40 was made in the athletic department. This cash was given to appellant at the cash register, but there is no entry on the cash register tape in this amount. There is, however, an entry for $1,126.25, otherwise unexplainable, which the letter code indicates was made by appellant. Only $1,120.07 in cash was deposited on September 24.

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Dubry v. State*, 582 S.W.2d 841 (Tex.Cr.App.1979); *Sewell v. State*, 578 S.W.2d 131 (Tex.Cr.App.1979); *Easley v. State*, 564 S.W.2d 742 (Tex.Cr.App.1978). We hold that the cumulative weight of the evidence in this case is sufficient to sustain the jury's verdict.

Appellant contends that the trial court erroneously admitted in evidence a chart written on a blackboard by the prosecutor. This chart listed each of the twenty-four cash shortages testified to by Mayo, giving the date, department, and amount. Appellant argues that the exhibit does not comply with the Business Records Act, Art. 3737e, V.A.C.S.

Tom Mills, Dallas, for appellant.

Henry Wade, Dist. Atty., Stanley Keeton, and Daniel P. Clark, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W. C. DAVIS, JJ.

██ The chart did not purport to be, nor was it admitted as, a business record. It was merely a visual aid to illustrate Mayo's rather complicated testimony. The use of such visual aids is within the discretion of the trial court. *Orato v. State*, 170 Tex.Cr.R. 514, 342 S.W.2d 108 (1960). Since all of the information on the chart had been properly proved, the chart itself was admissible. This ground of error is overruled.

██ Finally, appellant contends that the trial court erred by refusing to grant her probation because she did not make restitution. This contention is without merit. Whether a defendant is entitled to probation is for the trial court, in its discretion, to decide, and that decision is not appealable. *Burns v. State*, 561 S.W.2d 516 (Tex.Cr.App. 1978); *Trevino v. State*, 519 S.W.2d 864 (Tex.Cr.App.1975).

The judgment is affirmed.

ROBERTS, J., not participating.