**AFFIRMED as MODIFIED and Opinion Filed December 28, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01486-CR**

**JESUS ANTONIO REYDOM, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F16-40079-Y**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Evans
Opinion by Justice Evans

Jesus Antonio Reydom appeals his conviction for aggravated sexual assault of a child younger than fourteen years of age. After finding appellant guilty, the jury assessed punishment at eighteen years in prison. In nine issues, appellant contends the evidence is insufficient to support his conviction; the trial court erred by overruling his objections to the admission of certain evidence and to a portion of the State's closing argument; his due process rights were violated when he was tried on an indictment that was not amended; and the judgment should be modified to reflect the correct offense. We modify the judgment to reflect appellant was found guilty of

aggravated sexual assault of a child under section 22.021 of the penal code and, as modified, we affirm.

## Background

Dolores Montes and David Gomez began dating in 2015. They lived together, along with several of their children, in his house in Mesquite. Appellant was David's good friend who often visited and sometimes stayed over at the house. In December 2015, Dolores and her daughters moved out of the house to a new residence in Lancaster.

On September 1, 2016, Dolores was having dinner with her daughters, Denise, CM, and TM. It was Denise's nineteenth birthday. When Dolores left the table, eleven-year-old TM told Denise she had been sexually abused by appellant. Denise found her mother and told her appellant had "been touching" TM. Dolores called David and told him they "needed to get [appellant] out of there." Dolores told TM she was going to call the police, but TM said she was afraid and did not want to talk about it. Nevertheless, several days later, Dolores contacted the police and took TM to the Dallas Children's Advocacy Center for a forensic interview.

Although initially charged with continuous sexual abuse of a young child, appellant was tried for and convicted of aggravated sexual assault of a child under fourteen years of age. The jury assessed punishment at eighteen years in prison. This appeal followed.

## Indictment

In his ninth issue, appellant contends the trial court erred by proceeding to trial as if the indictment had been amended. He claims he was denied due process of law by being convicted of an offense "to which the indictment was not amended."

The indictment alleged that appellant:

did then and there intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [TM], a child younger than 14 years of age, hereinafter called complainant, namely by THE PENETRATION OF THE COMPLAINANT'S FEMALE SEXUAL ORGAN BY THE DEFENDANT'S FINGER.

Seven months before trial, the State filed a motion to abandon the words "during a period that was 30 or more days in duration, when the defendant was 17 years of age or older" and "two or more acts of." Appellant did not file a response or otherwise object to the motion.

Appellant did not file any pretrial motions regarding the indictment before the case proceeded to trial in November 2019. When appellant was arraigned in court on aggravated sexual assault of a child, he entered a "not guilty" plea. The attorney for the State then informed the trial court "just to note it for the record, the defendant was charged with a [sic] continuous sexual abuse of a child. Prior to my taking over the case, the indictment was amended to reflect what I just read, which is the aggravated sexual assault charge." Appellant did not object or lodge a complaint at this time. Later, during voir dire, appellant's counsel read the indictment for aggravated sexual assault to the venire panel and relied on its language, specifically

–3–

that it alleged he committed "sexual abuse against [T.M.] a child younger than 14 years of age . . . by the penetration of the female sexual organ."

Despite opportunities to do so, appellant did not timely object to the State's motion to abandon language in the indictment. Under these circumstances, we conclude he waived any complaint. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14 (if defendant does not object to defect, error, or irregularity of form or substance in indictment before date on which trial on merits begins, he waives and forfeits right to object and may not raise objection on appeal or in any other postconviction proceeding); *Jenkins v. State*, 592 S.W.3d 894, 902 (Tex. Crim. App. 2018). We overrule appellant's ninth issue.

## Sufficiency of the Evidence

In his first issue, appellant claims the evidence is insufficient to support his conviction because there is no evidence to corroborate TM's accusations.

When reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, the standard of review we apply is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Id*. On appeal, we determine whether the necessary inferences are

–4–

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.*

A person commits aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of the child by any means, and the child is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). Contrary to appellant's complaint, the testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd) (child victim's testimony sufficient to support conviction for aggravated sexual assault); *Villarreal v. State*, 470 S.W.3d 168, 170 (Tex. App.—Austin 2015, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (conviction supportable on uncorroborated testimony of victim of sexual offense if victim informed any person, other than defendant, of alleged offense within one year after date on which offense was alleged to have occurred).

Denise Villagomez testified she is one of Dolores's eight children. Her sister, TM, is the youngest. On September 1, 2016, Denise was having dinner with her mother and two youngest sisters when TM told her appellant had touched her. Denise, in turn, told her mother. Dolores then called David and told him.

Dolores testified she met and began dating David in 2015. She met appellant because he was a friend of David's. In fact, David and appellant were so close they referred to each other as brothers. In the middle of 2015, Dolores and several of her

–5–

daughters moved in with David, but by the end of the year, she and her daughters moved to Lancaster. In August 2016, Dolores's daughter, Anissa, went to the hospital to have her baby. About the same time, David was arrested. Dolores needed help with her television-installation business, so David told her to call appellant. Because appellant was a family friend, a person she trusted to be around her kids, and someone they "all loved . . . very much," she drove to Quinlan to pick him up. Dolores could not remember the exact date that she did so.

On September 1, Dolores went to dinner with Denise, CM, and TM to celebrate Denise's birthday. Later that evening, Denise told her appellant had been touching TM. Dolores called David and later contacted the police. Although TM did not tell her any specific details, Dolores said she believed TM because "[s]he is very, very, very honest. . . [and] always has been."

TM testified she was born on April 19, 2005; at the time of trial, she was fourteen years old and lived with her mother, Dolores, and her sister, CM. Her older sister, Denise, lived with them previously but recently had moved out. According to TM, she is close to both Denise and CM. TM met appellant through David, her mother's former boyfriend. She and appellant used to hang out together, and at one point, she considered him her best friend. But that changed when appellant began touching her.

At trial, TM detailed two instances when appellant touched her. The first was when she and appellant were at the Lancaster home in the upstairs room she shared

with CM, watching a scary movie. They were lying on the floor while CM was on her bed, watching a different movie on her phone. Appellant put his hands under the jean shorts TM was wearing, touching her "private area." He touched the inside of her vagina and "started rubbing it" with a circular motion. She said it made her feel disgusted; she stood up and got on her bed to get away from him. Appellant followed her and tried to do it again, but she moved his hand and pulled the bed cover over her body.

Another time, TM was downstairs, watching a movie. Her mom and David were in her mom's room which looked out toward the television. TM was lying on the floor with a big purple blanket covering her. Appellant laid down next to TM and "went under [the] cover." Although she moved away from him, appellant put his hands in her pants and touched the inside of her vagina with his finger. TM froze and did not know what to do. Appellant moved his hand in a circular motion for "two or three minutes." She then stood up and went into the bathroom where she stayed until the movie ended.

Finally, TM described a time when she, appellant, David's daughter, RG, and several other family members were at the hospital where TM's sister, Anissa, was having a baby. It was late, and RG wanted to go home. When appellant said he wanted to leave as well, TM felt she needed to go to protect RG who was younger than TM. Once they got home, RG went into a bedroom to play on TM's phone. TM laid down on the floor in front of the television. Appellant laid down next to her so

TM turned on her side. According to TM, she felt something on her back. Appellant told her "It's hard[,]" and tried to grab her hand. She pulled her hand away because she did not want to touch his penis. Appellant told her he would get in a lot of trouble if she told anyone what had happened. Although TM said she could not remember the order in which the three incidents occurred or the specific dates when appellant touched her vagina, she said the time appellant did not touch her vagina but tried to make her touch his penis occurred on August 21, 2016, when her nephew was born.

After hearing this testimony as well as that of other witnesses, including the outcry witness, TM's therapist, and Detective Jason Rohack, the jury found appellant guilty. The jury, as factfinder, was able to assess the credibility and demeanor of the witnesses and to resolve any conflicts in the evidence. More importantly, the jury was able to assess TM's credibility and demeanor when she testified. Clearly, the jury found TM credible. Viewing the evidence in the light most favorable to the verdict, we conclude a reasonable factfinder could have found appellant guilty of aggravated sexual assault of TM. *See Tear*, 74 S.W.3d at 560 (child victim's testimony alone sufficient to support conviction). We overrule appellant's first issue.

**Juror No. 1**

In his second and third issues, appellant contends the trial court erred by overruling his objection to Juror No. 1, Kassa Wondimu. He claims the trial court's action resulted in the denial of his constitutional right to a trial by twelve jurors.

On the first day of trial, the trial court informed the venire of the qualifications required to serve as a juror, including the ability to read and write the English language. When the court asked if everyone was able to read and write English, a woman raised her hand and said she was not following what was being said. The trial court then asked, "Anyone else who struggles with the English language or comprehension and maybe won't be able to follow all the evidence in this case?" No one responded. The woman was subsequently struck, and the jury panel, including Wondimu, was sworn in.

The following morning, the bailiff told the trial court that Wondimu had "language issues." In the presence of appellant and the State, the trial court questioned Wondimu about his language skills; Wondimu said he "can listen and understand, but to respond to something is hard." He further clarified that giving an opinion is difficult because he struggles with "using the proper language. The verbs. . . I'm not perfect. But if you want me, I can try." Responding to the State's questions, he said he understood the questions, the discussion of the law, the presumption of innocence, and the burdens discussed during voir dire, but that it would be hard to make a statement. He continued:

> Conversation, like, when you have a – like, making statements. Like, if you ask me something about the things, explain this thing and that situation, and that would be a little bit harder for me, I don't know the language. This is my second language. . . My accent is one [issue], and the other thing, like, if you ask me some question, to explain – not translate it or say it in another way, I can't do that. That is what I am trying to say.

The court then said, "I think what Mr. Wondimu is saying is that he can understand everything that we're talking about, the questions and the answers, but he's worried about his own communication. Is that correct?" Wondimu agreed, adding that he felt comfortable giving his opinion and explaining to the other jurors what he thought about a specific piece of evidence. Although appellant objected on the ground that Wondimu is "not fluent . . . which would cause him to misunderstand the basis of what the jury is supposed to do," Wondimu said it was mostly his accent that he was concerned about and that he reads, writes, and understands the English language. The trial court overruled appellant's objection, and Wondimu remained on the jury.

Article 35.16 of the code of criminal procedure provides the grounds on which parties may assert a challenge for cause as to a potential juror. TEX. CODE CRIM. PROC. ANN. art. 35.16; *Butler v. State*, 830 S.W.2d 125, 130 (Tex. Crim. App. 1992). When a prospective juror is challenged on one of these grounds, the trial court determines the capability or fitness of the prospective juror. TEX. CODE CRIM. PROC. ANN. art. 35.21; *see Phillips v. State*, 656 S.W.2d 219, 220 (Tex. App.—Fort Worth 1983, no pet.). If the court determines that the prospective juror is incapable or unfit, the trial court should excuse the juror. *See Saldivar v. State*, 980 S.W.2d 475, 485 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). A juror is incapable or unfit and may be challenged for cause based on the juror's inability to read and write. TEX. CODE CRIM. PROC. ANN. art. 35.16(11). Encompassed in this specific challenge is a

–10–

juror's inability to understand English. *Montoya v. State*, 810 S.W.2d 160, 170 (Tex. Crim. App. 1989) (juror's trouble understanding English is excludable ground under art. 35.16(a)(11)). Because this challenge is not an absolute disqualification, it must be raised before the jury is empaneled and sworn in; a party forfeits the right to complain if it is not raised during voir dire. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (holding that absent an absolute disqualification, challenge for cause is forfeited if not asserted); TEX. CODE CRIM. PROC. ANN. art. 35.19 (absolute disqualifications are when juror "is subject to the second, third or fourth cause of challenge" in article 35.16).

Appellant objected to Wondimu based on his fluency in the English language; however, the trial court questioned Wondimu and, based on his answers and the court's own conversation with the juror, determined Wondimu could read, write, and understand the English language. Given the record before us, the trial court did not abuse its discretion in so concluding. *See Webb*, 232 S.W.3d at 112-13. We overrule appellant's second and third issues.

## Evidence

In his fourth, fifth, and sixth issues, appellant contends the trial court erred by overruling his objections to the admission of certain evidence.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The trial

–11–

court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer*, 569 S.W.3d at 669. We will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Johnson*, 490 S.W.3d at 908.

*Chart*

In his fourth issue, appellant claims the trial court erred by overruling appellant's objection to State's Exhibit 1, a general timeline of events. Appellant argues the chart should not have been admitted because it had no probative value.

During its case-in-chief, the State created a timeline of certain events based on the testimony of various witnesses:

- TM's birthday (April 19, 2005)
- Dolores meets appellant (2015)
- Dolores/David: Mesquite (2015)
- move to Lancaster (Dec. 2015)
- appellant helps mom in Lancaster (2016)
- Bentley born (Aug. 2016)
- Denise's birthday at Cicis (Sept. 1, 2016)
- Police called (Sept. 10, 2016)
- Forensic Interview (Oct. 11, 2016)

The State offered the chart as Exhibit 1 along with Exhibit 2, a "family tree" with the names of Dolores, her family members, David, and appellant. Appellant objected to Exhibit 1 as "hearsay," "irrelevant," and "meant to mislead the jury." The trial court overruled the objections and allowed both exhibits "for record purposes."

Although appellant now assigns this ruling as error, we disagree. The trial court may, in its discretion, allow the use of visual aids to illustrate witnesses' testimony that is already before the jury. *Clay v. State*, 592 S.W.2d 609, 613 (Tex. Crim. App. [Panel Op.] 1980); *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In this case, Exhibit 1 was created in court as witnesses testified, and it listed events based on specific testimony. Thus, the contents of the list were already before the jury, and the chart was merely a visual aid that depicted that testimony. We cannot conclude its admission was improper or an abuse of discretion. *See Clay*, 592 S.W.2d at 613. We overrule appellant's fourth issue.

*Outcry Witness*

In his fifth issue, appellant argues the trial court erred by concluding the forensic interviewer was the proper outcry witness, instead of Denise or Dolores.

Outside the jury's presence, the trial court held a hearing to determine who was the proper outcry witness. Denise, Dolores, and the forensic interviewer, Bernadette Yupit-Martinez, were present and testified.

Denise said TM asked her what she would do if somebody was touching her. When Denise asked who was touching her, TM said appellant. However, TM never gave Denise any details.

Dolores testified it was Denise, not TM, who told her appellant was touching TM. According to Dolores, she did not ask TM any details, and TM did not tell her anything about the incidents.

In contrast, Yupit-Martinez testified that when she conducted TM's forensic interview on October 11, 2016, TM discussed three distinct incidences when appellant digitally penetrated her with his finger. Yupit-Martinez gave additional details about TM's disclosures. Yupit-Martinez said it was her understanding the she was the first adult over eighteen to whom TM gave details on the sexual abuse.

At the conclusion of the hearing, appellant argued none of the witnesses were appropriate outcry witnesses. The trial court disagreed and designated Yupit-Martinez.

Although appellant now claims the trial court "improperly designated the forensic interviewer rather than the sister or mother," he specifically argued at the hearing that neither the sister nor the mother was the appropriate outcry witness. Having done so, he cannot complain on appeal that neither the sister nor the mother was designated. *See* TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2014) (issue on appeal not preserved when complaint does not comport with trial objection).

*Expert Witness on Grooming*

In his sixth issue, appellant complains about the trial court's ruling on his objection to therapist Tama Walley's designation as an expert witness on "grooming." Specifically, appellant objected that she was not qualified.

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702. The rule was designed "to relax the traditional barriers to opinion testimony." *Morris v.* State, 361 S.W.3d 649 (Tex. Crim. App. 2011). There are three requirements for the admission of expert testimony: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the factfinder in deciding the case; these are commonly referred to as qualification, reliability, and relevance. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006).

Before the rule 705 hearing, Walley testified she has been a therapist at the Children's Advocacy Center for about four years. Prior to that, she was a school counselor for four years and a teacher for nine years at the international school in Bamako, Mali, West Africa. She has a bachelor's degree in psychology, a master's degree in social work, and a clinical license to practice as a counselor/therapist. To have a clinical license requires 3000 hours of supervision over a two-year period. Walley is licensed and trained in trauma-focused cognitive behavioral therapy, internal family systems therapy, and eye movement desensitization and reprocessing therapy. She explained that she was specifically trained for "trauma, to work with disassociation, to work with other things that come with complex trauma." Her role as a therapist encompasses the entire family because the whole family is affected. Walley testified that perpetrators of child abuse are generally good at being manipulative and deceptive. When the State asked about grooming, appellant objected and asked to take Walley on voir dire. He then said, "I'll withdraw that." Walley continued testifying about grooming and, after several minutes, appellant objected to "the narrative response and to the witness testifying as an expert, to show qualifications." He then again asked to take Walley on voir dire which later turned into a rule 705 hearing outside the jury's presence.

During the hearing, appellant questioned Walley about the studies and literature she relied on in forming her opinions. She explained that she was not doing research or writing articles but had training in the dynamics of sexual abuse,

including grooming. She was basing her opinion on her experience as a therapist who had treated and counseled over 100 children and that grooming was part of understanding sexual abuse and how it happens. At the conclusion of the hearing, the trial court designated Walley as "an expert based on her education and experience in that field."

Appellant assigns this ruling as error. We disagree. Grooming evidence has been presented in various court by numerous types of experts, including psychiatrists, psychologists, therapists, social workers, and some people who work in law enforcement. *Morris*, 361 S.W.3d at 665. The court of criminal appeals noted a person can gain superior knowledge regarding the grooming phenomenon through her experience with child-sex-abuse cases. *Id*. It is not necessary that the witness be a psychiatrist or psychologist, but that she possess "superior knowledge covering the behavior of offenders who sexually victimize children." *Id*. Here, after Walley testified about her training and experience with children who were victims of sexual abuse, the trial court designated her an expert based on her education and experience. We cannot conclude the trial court abused its discretion in doing so. *See Rodgers*, 205 S.W.3d at 527–28 (the trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case). We overrule appellant's sixth issue.

## Closing Argument

In his seventh issue, appellant argues the trial court erred by overruling his objection to the prosecutor's jury argument. Appellant contends the argument was a comment on his failure to testify.

At closing, the prosecutor summarized the evidence, focusing on TM's testimony. In response, appellant emphasized inconsistencies in dates and focused on TM's inability at trial to remember dates or general timelines. He repeatedly implored the jury to look at the "credibility of the witnesses." During the State's final closing statement, the following occurred:

> THE STATE:     And the last thing that doesn't make sense, she has absolutely no motivation to lie. Because again, remember, we are not talking about someone who she hated. We're not talking about a scenario where it's a stepparent who disciplines her and she really doesn't like that. We're not talking about a friend who takes her mom's attention away all the time. We're talking about someone who she called her best friend. Someone who was coming over to help her mother at a time when her mother needed help, a time -- a person who she said, "I really liked hanging out with him. It was really fun. He was cool. We watched movies." She had no motivation to make this up about her best friend.
>
>     Who does have motivation to lie? Who is the only person in the courtroom right now who has motivation to lie? The defendant.
>
> DEFENSE:     Your Honor, I'm going to object to that. It's getting into the Fifth Amendment.
>
> THE COURT:     Overruled.
>
> THE STATE:     She had --
>
> DEFENSE:     That's improper jury argument.
>
> THE COURT:     Overruled.

–18–

THE STATE:     She has no motivation to lie. The only person who has motivation to lie is the defendant.

DEFENSE:     Same objection, Judge. I'll have a running objection.

THE COURT:     Overruled.

Proper jury argument consists of (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Milton v.* State, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019); *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so "it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Milton*, 572 S.W.3d at 239.

All defendants have a Fifth Amendment privilege not to testify, and neither the trial judge nor the prosecution may comment on a defendant's failure to testify. *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). In determining whether a prosecutor's comment violated the Fifth Amendment, we view the argument from the jury's standpoint and resolve any ambiguities in favor of the argument being permissible. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). The "implication that the State referred to the defendant's failure to testify must be a clear and necessary one. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Id*. The test "is whether the language used was manifestly intended or was of such a character

that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id*. When applying this standard, we analyze the context in which the comment was made to determine whether the language used was of such character. *Id*.

After reviewing the entire jury argument, we conclude the trial court's rulings were not an abuse of discretion. The prosecutor's comments were not a clear reference to appellant's failure to testify, nor did they draw the jury's attention to an absence of evidence that could have been supplied only by appellant. *See Brown v. State*, 92 S.W.3d 655, 667 (Tex. App.—Dallas 2002), *aff'd*, 122 S.W.3d 794 (2003). Rather, they were in direct response to defense counsel's argument that TM was not credible, a theme that was repeated throughout his closing. *See Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010) (proper jury argument includes answer to argument of opposing counsel). We overrule appellant's seventh issue.

## Judgment

In his eighth issue, appellant asks the Court to modify the judgment to show he was convicted of aggravated sexual assault of a child, not continuous sexual assault of a child. The State agrees that this Court should modify the judgment and also asks the Court to modify the judgment to reflect the correct statute for the offense.

We have the authority to modify an incorrect judgment where the necessary data and information is available. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865

–20–

S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (appellate courts have power to reform judgments); *Estrada v. State*, 334 S.W.3d 57, 63 (Tex. App.—Dallas 2009, no pet.) ("This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so.").

The verdict and the reporter's record confirm the jury found appellant guilty of aggravated sexual assault of a child. Thus, the appellate record supports the corrections appellant seeks.

We sustain appellant's eighth issue. We modify the trial court's November 20, 2019 judgment by striking "SEXUAL ABUSE OF A CHILD CONTINUOUS: VICTIM UNDER 14" and replacing it with "AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14" as the "Offense for which Defendant Convicted." We also strike "21.02" and replace it with "22.021" under "Statute for Offense."

As modified, we affirm the trial court's judgment.


/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191486F.U05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS ANTONIO REYDOM,
Appellant

No. 05-19-01486-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas Trial Court Cause No. F16-40079-Y. Opinion delivered by Justice Evans. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We strike "SEXUAL ABUSE OF A CHILD CONTINUOUS: VICTIM UNDER 14" and replace it with "AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14" as the "Offense for which Defendant Convicted."

We also strike "21.02" and replace it with "22.021" under "Statute for Offense."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 28, 2020